UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


GREGORY SANCHEZ,                          )
                                          )
                    Plaintiff,            )
                                          )
        vs.                               )          05 C 6801
                                          )
CITY OF CHICAGO,                          )
                                          )
                    Defendant.            )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before this Court on Defendant the City of Chicago ("the City")'s

motion for summary judgment. For the following reasons, the City's motion is granted

in part and denied in part.

## BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 statements.[1]

---

[1]The form of parties' L.R. 56.1 statements are a source of dispute. Plaintiff filed
a motion to strike portions of Defendants' response to his statement of additional facts
as argumentative and of excessive length. In response, the City argued that its detailed
and lengthy response is justified given Plaintiff's unclear and vague statements of fact.
The City's response is not so egregious, nor is Sanchez's own compliance with Local
Rule 56.1 so careful, that striking any parties' Local Rule 56 statement in its entirety
is warranted. This Court has read both parties' Local Rule 56 statements and has
considered only those portions of the statements of fact which comply with the rule.
Statements of fact not properly before us or unsupported by the record have been
disregarded. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281 (7th Cir. 1997).

From late December 2004 until early June 2005, Plaintiff Gregory Sanchez ("Sanchez") worked as a probationary Communicable Disease Control Investigator II ("CDCI II") with the City. A CDCI II conducts personal interviews with individuals infected with communicable diseases "in a manner that best contributes to the interruption of their transmission." In June 2005, Sanchez was fired, and he admits that the primary issue behind the decision to fire him was his reluctance to perform interviews.

I.      Sanchez's Employment with the City

Prior to being hired as a CDCI II, Sanchez informed his interviewers that he had AIDS as well as Attention Deficit Hyperactivity Disorder ("ADHD"), and they said they "would work with him." He did not inform the City that he had depression.

As a probationary CDCI II, Sanchez had to pass an exam for each of 10 training modules and a comprehensive exam, as well as have his work monitored and evaluated by his supervisor. During the module training, Sanchez informed his supervisors that he felt overwhelmed. His supervisors encouraged him to continue. They testified that they did not consider his ADHD to be "that big of an issue" because Sanchez was doing well in the modules. Sanchez asked for, and the module trainer provided to him, more time to study, a quiet room, and visuals during training. Sanchez successfully passed all 10 of the training modules on the first try, scoring an average of at least 91%,

including a 96% on the syphilis test. He passed the comprehensive exam with a score of at least 90%. Following module training, Sanchez participated in Introduction to Sexually Transmitted Disease Intervention ("ISTDI") training, which included a two week interview training period. ISTDI training involved practicing syphilis interviews and taking tests. Sanchez again felt overwhelmed by the ISTDI training and informed his instructor that he had ADHD. He told his instructor that he used colored pens and sticky notes, and his instructor permitted him to use those aids. Sanchez completed ISTDI training on time and was rated at least competent (defined as "consistently meets the expectations of skill use in typical situations. He or she performs at the appropriate beginning to intermediate level") in all categories. The CDCI II trainers testified that once a probationary employee completes module training and ISTDI training, he has accumulated all of the knowledge he needs in order to perform the job.[2]

After completing training in late February 2005, Sanchez began working at the City of Chicago's Lakeview Clinic. Sanchez could conduct interviews with patients

---

[2]Sanchez disputes this point, arguing that there were additional observation requirements. Although he has cited two pages of deposition testimony in support, he has not attached those pages to his L.R. 56.1 statement and we cannot find those pages elsewhere in the record. Accordingly, we must strike his response as unsupported and in violation of the local rule. *See Albrechtsen v. Bd. of Regents of University of Wisconsin System*, 309 F.3d 433, 436 (7th Cir. 2002)*; Flaherty v. Gas Research Institute,* 31 F.3d 451, 453 (7th Cir. 1994).

with HIV, chlamydia and gonorrhea; could work independently on cases concerning individuals infected with HIV, gonorrhea, and chlamydia; and could complete the paperwork in connection with those types of cases. He had difficulty only in a single area - the interviewing and the paperwork related to syphilis cases.

Difficulties arose shortly after Sanchez's arrival at Lakeview. Sanchez conducted no in-clinic interviews, and the parties dispute the extent to which Sanchez refused to perform "field" interviews. Sanchez admits his coworkers complained that he was unwilling to perform his share of interviews.[3] Sanchez believed he needed to observe more interviews before he would be ready to perform them, and he claims that one of his supervisors told him he needed to shadow more interviews before he could perform one. His supervisor, Edmund Morris, spent hours explaining syphilis to Sanchez and asked other employees to help Sanchez by demonstrating interviews. Three employees demonstrated full and partial syphilis interviews for Sanchez, and he observed interviews of persons with other communicable diseases.

---

[3]Sanchez does not deny that his coworkers complained about his unwillingness to perform interviews, to keep up with patients, and to perform field visits. Instead, he objects to the statement as "irrelevant and immaterial because it involves a time period prior to when he requested reasonable accommodations." Absent either a denial or an admission, we cannot discern a genuine dispute concerning the fact, and must strike these responses for failure to comply with L.R. 56.1. *See Ammons v. Aramark Uniform Services, Inc*. 368 F.3d 809, 818 (7th Cir. 2004).

His supervisors believed that his continued reluctance to perform interviews meant that he was heading for dismissal. In April 2005, frightened that he would lose his job, Sanchez spoke to his vocational counselor, his doctor, and his psychiatrist, stating that he had "nothing documented" about the "learning disorder/ADHD and HIV/neurapathy [sic]" and asked them to write him a "specific diagnosis and a letter that will request...needs or accommodations."

On April 20, 2005, Sanchez submitted a City of Chicago "Request for Reasonable Accommodation" in which he asked for 1) visual aids to assist with paperwork in syphilis interviews, 2) a smaller caseload for syphilis cases, to be increased over time, 3) closer supervision including more job shadowing in areas of inexperience (syphilis cases), and 4) free time off for medical appointments. Accompanying this request was a letter from his psychologist in which his psychologist told the City that Sanchez suffered from ADHD, some symptoms of which may be due to his HIV infection. His psychologist did not inform the City that he suffered from anxiety, depression, or post-traumatic stress.

On May 3, 2005, Sanchez met with Freda Weaver, Director of Field Operations, and Tasneem Shakir, the Employee Relations Supervisor in the Chicago Department of Public Health. They agreed that Sanchez would be transferred to the 31st Street Clinic, a clinic with a smaller caseload where Sanchez could have more supervision.

They also agreed to allow Sanchez to copy and color code his files but would not permit him to bring them home, and they told him he could bring a one-page "cheat sheet" to interviews. Finally, they suggested that Sanchez use his lunch hour or make specific requests under the City's sick leave policy to go to his medical appointments. These agreements were memorialized in a May 10, 2005 letter, along with an Enhanced Supervision and Training Schedule.

On May 4, 2005, Sanchez began working at the 31st Street Clinic. He admitted that at that point, the City was hoping he would be able to perform his job with additional assistance. There, he could use color-coded box files and visual aids, and at least as of May 13, he could use a "cheat sheet." Further, his supervisor highlighted her comments on his files. He completed two interviews, one of which was audited by his supervisor. However, Sanchez never completed his interview "cheat sheet" either before or after the two syphilis interviews he conducted at the 31st Street Clinic.[4] His supervisors testified that he remained reluctant to perform interviews, although Sanchez submitted a post-deposition affidavit in which he denies this claim.

_____

[4] Sanchez submitted a post-deposition affidavit in which he asserts that he performed three interviews. Any facts in his post-deposition affidavit which contradict his prior testimony have been disregarded. *See Buckner v. Sam's Club, Inc*. 75 F.3d 290, 292 (7th Cir. 1996).

On June 10, 2005, Sanchez was discharged by Dawn Broussard. All parties agree that the primary issue motivating his dismissal was his reluctance to perform interviews. There is considerable dispute over the persons involved in the decision to terminate Sanchez; while the City maintains that Dawn Broussard terminated him, Sanchez contends that the decision was actually made between Broussard, Lora Branch, Weaver, and Yvonne Cruz (acting as Broussard's replacement during her maternity leave). According to undisputed testimony from Broussard and Weaver, Sanchez's ADHD did not play a role in the decision to discharge him.

## II. Sanchez's Medical and Work History

Sanchez was diagnosed with HIV in 1992 and with AIDS in 1997. He has a high school education and completed 13 credit hours at Indiana University. From 1994 to the present, he participated in training programs and successfully passed tests to obtain various certifications on sexually transmitted diseases. In 1995, he founded "Let's Make a Change" and served as its director from 1995-2000. As director, his responsibilities included providing case management to HIV/AIDS affected clients, serving as a client advocate in crisis situations, and performing public speaking engagements. From 2001 to 2003, he worked at Horizons Community Services ("Horizons") as a hotline counselor and later, as an HIV, AIDS, and STD prevention specialist. His duties at Horizons included providing callers with information on

HIV/AIDS and STDs, offering crisis intervention and emotional support, conducting prevention case management, maintaining records, conducting HIV testing and counseling, and performing community outreach and education. Sanchez was demoted from prevention specialist to HIV hotline counselor. At that time, he became overwhelmed due to anxiety, began to stutter, and had problems remembering things during his hotline calls. He quit his job at Horizons in September 2003. At no time during this period did Sanchez request accommodations due to any disability.

In September 2003, Sanchez applied for disability benefits from the Social Security Adminsitration ("SSA"). His therapists recommended that he receive disability benefits based upon a primary analysis of major depression with avoidant and paranoid features. In their report, the therapists also noted that he "may have" some neuropsychological impairment in the areas of memory, concentration, and several other cognitive processes. According to his therapists, his IQ scores on his verbal, performance, and full IQ tests were within the average range of intelligence for his peer age-group. These total scores included scores from sub-tests cited by Sanchez in which his scores in the areas of memory and concentration were reported low. As a part of his application, Sanchez self-reported feeling confused and overwhelmed by reading and household tasks, and that he has a general dislike and distrust of people. At the end of September 2003, the SSA began awarding Sanchez benefits based upon a

diagnosis of affective mood disorder, Major Depressive Episode with delusions. He has received benefits from 2003 to the present. He has never informed SSA of a change or improvement in his condition.

The parties argue extensively as to the cause and basis for Sanchez's alleged problems with learning and thinking, and the degree to which those can be resolved through medication. His doctor reported to the SSA that Sanchez's HIV has led to a marked impairment in memory and concentration; and at least one of his psychiatrists testified that HIV could be the cause of his cognitive difficulties. The City contests the severity and cause of his cognitive difficulties, noting that there is no evidence of AIDS dementia and no conclusive analysis that Sanchez's cognitive difficulties are caused by HIV as opposed to any other factor. A recent report from psychological evaluation indicates that Sanchez has severe to profound deficits in memory, functioning, attention, and concentration.

Sanchez and his infectious disease physician testify that he has difficulty completing thoughts, listening to instructions concerning his medication regimen, and following that regimen. Sanchez testified that he is often distracted while grocery shopping and must use a list; that he sometimes forgets to take his medication but can concentrate without the medicine by using self-discipline; that his partner helps him with finances and the computer, that he has a hard time following directions; that he

believes his ADHD made it difficult for him to learn the area of syphilis while working for the city; that he has difficulty with his short term memory and had to really concentrate in order to study for his tests as a CDCI II. He further testified that he becomes distracted when he is not interested in the subject matter, but if he is interested, he is attentive, and he is interested in the STD field.

Sanchez has been prescribed medication for his AIDS, his neuropathy, and his ADHD. He did not take his AIDS medication at all, stopped taking his medication for ADHD, and did not take his neuropathy medicine consistently during his employment with the City. Even without his medication, however, Sanchez himself testified that he can still learn and think. Although the medication makes learning easier, he testified that he can concentrate by using self-discipline, lists and "cheat sheets". He attributes his success in CDCI training to the accommodations afforded him by the City.

Sanchez's complaint alleges causes of action for discrimination on the basis of his disability and retaliation. The City now moves for summary judgment on both claims.

## LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record, at which time the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). At summary judgment, we construe all facts and draw all inferences from the record in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

## **DISCUSSION**

Sanchez alleges that he has ADHD aggravated by HIV/AIDS infection, and that this condition substantially limits his ability to learn and think. He claims he is disabled under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and that the City violated the ADA by failing to provide him reasonable

accommodations for his disability and firing him in retaliation for filing a formal request for accommodation with the City.

I.    Count I - Failure to Accommodate

The ADA prohibits discrimination against a qualified individual with a disability because of the disability of that individual.  42 U.S.C. § 12112(a).  Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." § 12112 (b)(5)(a); *EEOC v. Sears, Roebuck & Co,*, 417 F.3d 789, 796 (7th Cir. 2005).  To establish a claim for discrimination based upon a failure to accommodate, Sanchez must offer evidence that 1) he is a qualified individual with a disability; 2) the employer was aware of his disability; and 3) the employer failed to reasonably accommodate his disability.  *Id.*

The ADA's remedies, however, are available only for discrimination against "qualified individual[s] with a disability." *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939-40 (7th Cir. 2007).  In other words, if Sanchez is not disabled within the meaning of the ADA, his failure to accommodate claim fails as a matter of law. *Id.* Sanchez can prove that he is disabled under the ADA by establishing that: 1) he has a physical or mental impairment that substantially limits one or more major life activities; 2) he has a record of such impairment, or 3) he is regarded as having such

an impairment by his employer. 42 U.S.C. § 12102(2)(A); *Kampmier*, 472 F.3d at 937. An analysis of whether or not an individual is disabled under the ADA is made on a case-by-case basis. *Id.* at 938; *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198 (2002). We examine the possible bases for Sanchez's claim that he is disabled under the ADA in turn.

A.     Impairment Which "Substantially Limits" A Major Life Activity

A disability that "substantially limits" a major life activity is one that either leaves the individual unable to perform or significantly restricts the individual from performing a major life activity that the average person in the general population can perform. *Kampmier*, 472 F.3d at 937. *See also Toyota Motor,* 534 U.S. at 198; 29 CFR 1630.2(j)(l)(i)-(ii). The nature of the limitation is considered "in light of that which most people do in their daily lives, not with reference to a specific job." *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789, 801 (7th Cir. 2005); *see also Toyota Motor*, 534 U.S. at 201. This is a "demanding" standard. *Toyota Motor*, 534 U.S. at 197; *Scheerer v. Potter,* 443 F.3d 916, 919 (7th Cir. 2006). Finally, in determining whether or not an impairment substantially limits Sanchez, we must consider his condition "as it exists after corrective or mitigating measures used to compat the impairment," which includes taking into account both positive and negative effects of mitigating measures. *Branham v. Snow,* 392 F.3d 896, 903 (7th Cir. 2004); *Sutton v. United Air Lines*, 527 U.S. 471, 484 (1999). To survive summary judgment, Sanchez cannot rely on

conclusory allegations but instead must provide specific facts establishing that there is a material dispute concerning whether his disability substantially limits a major life activity. *Scheerer*, 443 F.3d at 919.

Sanchez claims that he has ADHD, with symptoms aggravated by his HIV/AIDS infection, and that this mental disability substantially limits his ability to learn and think. As a result, Sanchez alleges that he has extreme difficulty learning new tasks and understanding and following oral instructions without accommodations.[5] Sanchez argues that he has presented sufficient medical evidence, at this stage of the litigation, to show that his HIV infection has resulted in substantial limitations in learning and thinking.

Construing all disputed facts in Sanchez's favor, we find that he has presented sufficient evidence concerning his cognitive difficulties that a reasonable jury could conclude that he has a mental impairment. However, as the Supreme Court has explained, "merely having an impairment does not make one disabled for purposes of

---

[5]In his response to the City's Motion for Summary Judgment, Sanchez has expanded his claim that his ADHD, aggravated by HIV, has substantially limited his ability to learn and think. Sanchez now claims that his HIV infection substantially limits several major life activities "including learning and thinking, in additional to the numerous physical limitations caused by the disease" and asks us to consider as material facts a series of physical symptoms associated with his HIV infection. Sanchez may not amend his complaint by way of a brief in response to a motion for summary judgment. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Accordingly, we disregard these new arguments.

the ADA." *Toyota Motor*, 534 U.S. at 195. Sanchez cites *Bragdon v. Abbott*, 534 U.S. 624, 630-31 (1998), in support of his claim that HIV is a "disability" under the ADA from the moment of infection and emphasizes the connections between his HIV infection and his cognitive difficulties. Sanchez misstates the Court's holding. In *Bragdon*, the Corut held that HIV infection is an impairment, not a disability; instead, a plaintiff is only disabled within the meaning of the ADA if he can show that HIV infection substantially affects a major life activity. *Id*. Sanchez must show that his impairment has real world consequences - that is, that his cognitive difficulties "substantially limit" his ability to learn and think. It is here where his evidence falls short.

Sanchez testified that his disability affects his life both at home and at work. First, on the job, Sanchez claims that his disability makes it difficult only to learn new information, to conduct interviews, and to organize information. However, he admits that he only had difficulty learning the syphilis field and conducting interviews of syphilis patients. He passed all of his qualifying tests as a CDCI II with a score of greater than 90%; he received a "competent" evaluation from his interview training; and he was able to complete paperwork and conduct interviews of patients infected with other types of communicable diseases. His supervisors remained convinced he could do the job of a CDCI II given his performance in training. Furthermore, he did

all of these things without taking much of the medication prescribed to alleviate his ADHD, neuropathy, and AIDS.

Sanchez offers no evidence to support his claim that despite his extensive experience in the STD field, he was more unfamiliar with syphilis than with any other type of disease. He offers no other explanation as to why he is able to remember things and to perform his job with respect to all aspects except as to dealing with syphilis cases. If Sanchez's disability was truly substantially limiting, it is unreasonable to think that he would have difficulty only with the narrow category of syphilis cases, while still being able to perform the same cognitive tasks with respect to cases involving other communicable diseases. Sanchez argues that he was successful only because of the accommodations the City offered him - more study time and the ability to use visual aids to mark files and study. However, these corrective measures are not so severe or onerous as to substantially limit Sanchez's ability to learn; in fact, they differ little from common study techniques used by many people without mental impairments. Furthermore, the inability to learn to perform a narrow task for an employer does not mean that Sanchez's learning ability was substantially limited. *See Leisen v. City of Shelbyville*, 153 F.3d 805, 806-7 (7th Cir. 1998) (firefighter who could pass some, but not all courses, necessary to obtain a paramedic's license was not substantially limited in her ability to learn).

Sanchez also testified that he has difficulty completing thoughts and sentences, that he is easily distracted when he is not interested, and that he has difficulty with common tasks such as operating the computer, remembering his medication, going grocery shopping, dealing with finances, following directions, and studying for tests. He testified that he relies on his partner for help with the computer, with directions, and with finances. He uses a list to go grocery shopping. When he studies, he uses a quiet room with no distractions. His doctor must take extra time to extensively review his medication regimen. None of these difficulties are unfamiliar to most people - and the measures taken to correct them do not substantially limit Sanchez's major life activities. *C.f. Branham v. Snow*, 392 at 903-04 (describing the significant dietary restrictions and severe consequences of alteration from specialized diet suffered by a diabetic as substantially limiting his major life activity of eating). Instead, Sanchez has described a variety of coping mechanisms commonly used by persons who have difficulty concentrating or remembering things.

Sanchez has produced evidence that he felt unable to conduct interviews and organize paperwork in syphilis cases, while he was able to do these tasks in all other communicable disease cases. He also has produced evidence that he required some assistance and additional time, as well as lists and other reminders, to perform specialized household tasks. These difficulties simply do not transform his impairment

into a disability that is so "substantially limiting" as to qualify as a disability under the ADA.

B.    Record of an Impairment That Substantially Limits Major Life Activities

Sanchez may still show that he has a record of a disability substantially limiting a major life activity. *See Kampmier*, 472 F.3d at 938.  For this prong, Sanchez points to the fact that the SSA approved him for disability benefits, a determination that is relevant, but not dispositive, evidence in determining whether or not he is disabled under the ADA.  *See Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 927 (7th Cir. 2001). The record shows, however, that Sanchez was recommended for disability benefits, and those benefits were awarded, on the basis of a diagnosis of major depression.  While his major depression may have limited his ability to work, this is not related to his current claim - that ADHD aggravated by HIV/AIDS infection substantially limits his ability to learn and think.  Sanchez admitted that he never informed the City that he had depression.  There is no record of the award of disability benefits based upon ADHD or the cognitive effects of his HIV infection.

C.    "Regarded As" Disabled

Finally, Sanchez may show that the City regarded him as disabled in order to come within the protections of the ADA.  To show that his employer regarded him as disabled, he must show either that 1) the employer mistakenly believed that he has an

impairment that substantially limits a major life activity, or 2) the employer mistakenly believed that an existing impairment that is not really limiting does substantially limit a major life activity. *Cassimy v. Board of Education of the Rockford Public Schools, Dist. #205*, 461 F.3d 932, 937 (7th Cir. 2006). Simple awareness does not equate to a belief of a substantially limiting condition. *Id.* As the Seventh Circuit has explained, "If the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Id.* at 938 (quoting *Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002)).

Only conjecture could support a conclusion that the City regarded Sanchez as disabled. Sanchez claims that he told the City that he had ADHD and AIDS during his interviews. The City hired him anyway. The City provided him with his requested accommodations throughout his training, and his supervisors testified that they did not consider his ADHD to be an issue because he did so well in training. Furthermore, Sanchez admitted that staff at his first clinic, Lakeview, attempted on numerous occasions to help him learn more about syphilis and interviewing syphilis patients. Even prior to his formal request for accommodation, Weaver testified that she felt that he needed additional training but could complete his job. When Sanchez submitted a formal request for accommodation, the City transferred him to smaller clinic and set

up a schedule for enhanced training. Finally, Sanchez does not dispute that he was discharged because of his ADHD but because of his reluctance to perform interviews at all. In fact, he doesn't argue that the City believed his impairment was substantially limiting; he only argues that the City was aware of his cognitive difficulties.

Sanchez has not presented sufficient evidence to survive summary judgment, under any test established by the ADA, that he is disabled within the meaning of the statute. Accordingly, the City's motion for summary judgment on Sanchez's failure to accommodate claim is granted.

## II.    Count II - Retaliation

The ADA also prohibits retaliation against any individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203. Sanchez's retaliation claim can survive even if he is not actually disabled within the meaning of the ADA, because the ADA's prohibition against retaliation extends to all individuals attempting to raise a good faith claim under the statute. *See Cassimy*, 461 F.3d at 938.

To survive summary judgment, Sanchez may establish a prima facie case of retaliation under either the direct or indirect method of proof. *See Buie v.*

*Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). As an initial matter, Sanchez's claim fails under the indirect method, because he cannot offer evidence that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. The failure to provide this evidence is fatal. *Rogers v. City of Chicago,* 320 F.3d 748, 755-56 (7th Cir. 2003) (affirming the grant of summary judgment on the basis that plaintiffs "could not produce competent evidence that they were treated differently than similarly situated employees"). *See also Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 670 (7th Cir. 2006).

Sanchez has, however, assembled sufficient evidence to survive summary judgment on his retaliation claim under the direct method of proof. Under this method, Sanchez must offer evidence 1) that he engaged in a statutorily protected activity; 2) that the defendants subjected him to an adverse employment action; and 3) that a causal connection exists between the two events. *Treadwell v. Office of Ill. Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006). Sanchez has offered undisputed evidence that he submitted a formal request for accommodation to the City. Courts in this circuit, and others, have accepted a request for accommodation as "statutorily protected activity" for the purposes of establishing a claim of retaliation under the ADA. *Cassimy,* 461 F.3d at 938; *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006); *Wright v.*

*CompUSA, Inc.*, 352 F.3d 472, 477-78 (1st Cir. 2003). Sanchez has also offered undisputed evidence that he was subjected to an adverse employment action - his dismissal.

The City claims that Sanchez cannot make his prima facie case because the individual who fired Sanchez, Dawn Broussard, was unaware of Sanchez's request for reasonable accommodation. The City argues it is impossible for her to retaliate against him for a request she was unaware he had made. Sanchez counters that those who assisted Broussard in the decision were aware of his request, that Broussard was aware of his previous requests for accommodation, and that Weaver, one of the four supervisors advising Broussard, felt that Sanchez's formal request was inappropriate given her promise to work with him. A jury is the proper fact-finder to consider whether or not Broussard actually knew of Sanchez's requests, and the extent to which her knowledge caused his discharge. *See Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1459 (7th Cir. 1994). Further, Sanchez emphasizes the timing of his discharge, pointing to testimony that only a few weeks after his accommodations were put in place, his supervisors were well on their way to arriving at a decision to fire him. Sanchez has presented sufficient circumstantial evidence to allow a reasonable factfinder to infer that there was a causal connection between Sanchez's request for accommodation and his discharge. *See e.g. Treadwell*, 455 F.3d at 781 (explaining that

a plaintiff may use relevant and probative circumstantial evidence to support the elements of a direct case of retaliation). Accordingly, the City's motion for summary judgment on Sanchez's retaliation claim is denied.

## **CONCLUSION**

For the foregoing reasons, the City's motion for summary judgment is granted as to Count I of Sanchez's complaint, and denied as to Count II.

Charles P. Kocoras
United States District Judge

Dated:    February 28, 2007